# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

    v.                                                      Case No. 04-CR-191

**ERNESTO AMBRIZ**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Ernesto Ambriz pleaded guilty to conspiracy to distribute more than five kilograms of cocaine, contrary to 21 U.S.C. § 841(b)(1)(A). The government moved for a sentence reduction under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 to reward defendant for his substantial assistance, and defendant requested a below-guideline sentence. I granted the government's motion and defendant's request, and imposed a sentence of 54 months in prison. In this memorandum, I set forth the basis for the departure decision and the reasons for the sentence imposed.

## I. BACKGROUND

Defendant operated a boot store on the south side of Milwaukee, which became a meeting place for south-side dealers, who played cards and discussed drug trafficking there. While defendant did not keep drugs or allow transactions within the store, it became the place to go for dealers looking for cocaine, and defendant himself became a significant supplier. Between 1998 and 2004, he conspired with others to distribute more than 50 kilograms of cocaine.

## II. DISCUSSION

### A. Sentencing Procedure

In imposing sentence, I follow a three-step procedure. First, I determine the advisory sentencing guideline range. Second, I decide whether to grant any departures pursuant to the Sentencing Commission's policy statements. Finally, I select a sentence that is sufficient but not greater than necessary given all of the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Peralta-Espinoza, 413 F. Supp. 2d 972, 974 (E.D. Wis. 2006).

### B. Application

#### 1. Guidelines

The parties agreed that the offense involved between 50 and 150 kilograms of cocaine, producing a base offense level of 36 under the sentencing guidelines. U.S.S.G. § 2D1.1(c)(2). The parties further agreed that defendant was entitled to a 2 level reduction under the safety valve provision, § 2D1.1(b)(7),[1] and a 3 level reduction for acceptance of responsibility, § 3E1.1. Coupled with a criminal history category of I, defendant's imprisonment range was 108-135 months. Because defendant qualified for the safety valve, the ten-year mandatory minimum applicable to § 841(b)(1)(A) offenses did not apply, and I was permitted to impose sentence pursuant to the advisory guidelines. 18 U.S.C. § 3553(f).

---

[1] The safety valve applies if the defendant has no more than 1 criminal history point, did not use violence or possess a weapon in the commission of the offense, the offense did not result in death or serious injury, the defendant was not a leader or organizer, and the defendant truthfully provided the government with all information he has about the offense. 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.

2

**2. Departure**

The government moved for a sentence reduction under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) to reward defendant for his substantial assistance. In ruling on such a motion, I consider the following factors:

> (1) . . . the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>
> (5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).

I give substantial weight to the government's evaluation of the extent of the defendant's assistance, but the extent of the departure is within my discretion. I attempt to link the departure to the structure of the guidelines and typically use the method suggested by the Seventh Circuit of granting something on the order of a two-level adjustment for each factor found to be fully present, with a lesser reduction for those factors partially present. See United States v. Washington, 293 F. Supp. 2d 930, 934 (E.D. Wis. 2003).[2]

---

[2] In the present case, the government moved under 18 U.S.C. § 3553(e) as well as U.S.S.G. § 5K1.1; that statute allows imposition of a sentence under the mandatory minimum. However, because defendant qualified for the safety valve, the mandatory minimum was out regardless of the motion.

According to the government's motion, defendant debriefed and provided information confirming that his co-defendant, Luis Marquez, was one of his sources of supply. He also confirmed that Marquez was supplied by Oscar Cabrales, who was later arrested and whose house was searched based in part on defendant's information. Defendant also acknowledged receiving cocaine from co-defendant Jaime Reyes-Lopez, and described Marquez's dealings with Reyes-Lopez.

Defendant further identified several of his main customers, including Everardo Martinez, who was indicted separately. Defendant told agents that he supplied Martinez with over five kilograms of cocaine, that he introduced Martinez to Marquez, and that Marquez then supplied additional cocaine to Martinez. Martinez pled guilty but contested the drug weight figure in his pre-sentence report ("PSR"), which was based on information from defendant and Marquez. The government produced defendant for Martinez's sentencing hearing, but Martinez then withdrew his challenge and accepted the weight in the PSR. Defendant did not have to testify but was prepared to do so. Based on this cooperation, the government requested a 3 level reduction.

Under the first factor, I awarded a 2 level reduction. Defendant's information was significant and useful in establishing the drug weight in Martinez's case, which had a substantial affect on his guideline range. His information was also useful in obtaining the arrest and search of Cabrales. Finally, his information solidified the government's cases against Reyes-Lopez and Marquez.

Under the second factor, I also awarded 2 levels based on the government's belief that defendant's information was truthful, complete, corroborated by others, and relied upon in obtaining the complaint and warrant for Cabrales. Under the third factor, I awarded

4

1 level because defendant's cooperation consisted primarily of providing information. He did not engage in pro-active cooperation on the street. He was brought in to testify against Martinez, but that proved unnecessary. I awarded no reduction under the fourth factor because there was no specific evidence of injury or threats, or any particular risk. Nor did I award any reduction under the fifth factor because defendant did not begin to cooperate until after litigating pre-trial motions, well over a year after his arrest, and his delay undermined the usefulness of some of his information – particularly concerning his Chicago-area sources of supply.

Therefore, with a 5 level departure, the range became 63-78 months.

**3.    Section 3553(a)**

In imposing sentence, I consider the factors set forth in § 3553(a), which include:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the advisory guideline range;

(5)    any pertinent policy statements issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentence disparities; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in sub-section (a)(2). As indicated above, because the safety valve applied, I was authorized to consider these factors in imposing a sentence pursuant to (and below) the advisory guidelines, as well as one below the otherwise applicable mandatory minimum. See United States v. Beamon, 373 F. Supp. 2d 878, 883-84 (E.D. Wis. 2005) (discussing effect of § 3553(f) v. § 3553(e) on court's discretion post-Booker).

### a.     Nature of Offense

Defendant was involved in the distribution of large amounts of cocaine, 50-150 kilograms, over a period of about six years. The case was significant for both the amount and the length of time defendant was involved in drug trafficking. The government described him as the hub of a large-scale drug-trafficking organization on the south side of Milwaukee. However, there was no evidence of weapon possession or violence. Thus, the offense was serious but not aggravated

Defendant characterized himself as more of a middle man than a serious dealer; other dealers got together in his store, and defendant introduced them. He further claimed that his own addiction to cocaine drew him into the business of trafficking. There was a suggestion in the record that defendant introduced other suppliers and dealers to each other. However, to the extent that defendant suggested he was an addict whose trafficking activities were primarily for the purpose of obtaining drugs for himself, I could not accept his argument. The amounts moved by this conspiracy – and the controlled buys – showed that defendant was more involved than he claimed. He was not just an addict who dealt

6

primarily as a means of feeding his own habit. That said, he clearly was not a very successful dealer, as he worked hard at a legitimate occupation in addition to dealing, and it did not appear that he ever became wealthy.

### b. Defendant's Character and Background

Defendant was fifty-six years old, married for twenty-six years, and the father of five children, all but one an adult. His prior record was limited to a cocaine possession case from 1997. He had a solid employment history, operating a shoe store from 1992 to 2004, and a video store before that. Defendant's wife had worked for Milwaukee County for twenty-six years.

Defendant came to this country illegally more than thirty years ago, following his family, who came here to make a living. However, he never acquired or even applied for legal status, although other members of his family, including his wife, became citizens. It was unclear why defendant never made such efforts, and he faced deportation after service of his sentence on this case.

Defendant never attended school but educated himself and become literate. As indicated, he operated a business for many years, but it appeared that he failed to pay sales taxes, and the State of Wisconsin had a lien for more than $40,000.

It appeared that defendant hid his drug trafficking from his wife, who stated that he was a hard worker and supported the family. Defendant developed a serious cocaine problem between 1999 and 2004, which he also hid from his family.

7

### c. Purposes of Sentencing

Given his minimal record, peaceful demeanor, age and deportable status, defendant was not dangerous or a risk of recidivism. However, there was a need for a substantial period of confinement to promote respect for law and deter others. Defendant had substance abuse treatment needs, and he owed $7750 in "buy money," which I imposed as a condition of supervised release. See United States v. Daddato, 996 F.2d 903, 905 (7th Cir. 1993).

### d. Imposition of Sentence

The guidelines called for a term of 63-78 months after the departure. However, the guidelines failed to account for several aspects of the case.

First, the guidelines did not account for defendant's positive personal characteristics, including his lengthy marriage and stable family life. By all accounts he was a good father to his five kids and worked hard at a legitimate occupation, in addition to dealing, to support them. His wife characterized him as someone who constantly worried about the well-being of those close to him. I also received a positive letter from his daughter Angela, who explained that defendant was caring father, who got caught up in drug addiction and gambling. I also received a letter from defendant's son-in-law Daniel, who explained that defendant took an interest in him, trying to keep him out of trouble. Daniel stated that he learned the importance of family from defendant. These sincere statements from those who knew him best indicated that defendant had significantly positive aspects to his character.

Second, the guidelines did not account for defendant's long work history, including operating two legitimate businesses, and producing Spanish language television and radio programs. He worked hard to educate himself, having never gone to school.

Third, defendant will upon completion of his sentence be deported, removed from the country in which he has lived his entire adult life, and separated from his wife of nearly thirty years and his five children. He will have to start over in Mexico, a country he has not lived in as an adult, over the age of sixty. It appeared that all of his family was in the United States. He will have no one in Mexico.

Fourth, defendant spent nearly two years in pre-trial detention, under difficult conditions. It is well known that local jails do not provide the programming, recreation, visitation and other services prisons offer. Thus, time spent in local jails is harder than time spent in prison, and provided an additional degree of punishment in the present case. Defendant also noted that his deportable status will affect his placement within the Bureau of Prisons ("BOP") and disqualify him from a halfway house at the end of his term and a sentence reduction under the 500 hour drug treatment program. See 18 U.S.C. § 3621(e). I noted the last factor based on deportable alien status, but did not place much weight on it except to the limited extent that it added some additional punitiveness.

Finally, defendant demonstrated genuine remorse, accepted responsibility for his conduct, and assisted the government. These were signs of positive character development and merited some consideration in addition to that provided under § 3E1.1 and 5K1.1.

Given the non-aggravated nature of the offense and defendant's lack of prior record, I found that a sentence slightly below the guidelines would be sufficient to satisfy the

purposes of sentencing. Substantial confinement was still needed, however, to promote respect for law and deter others. Under all the circumstances, I found a sentence of 54 months sufficient but not greater than necessary.

Therefore, I committed defendant to the custody of the Bureau of Prisons for 54 months. This sentence did not vary much from the guidelines and was supported by the particular facts of the case; thus, it did not create any unwarranted disparity. I also imposed a three-year supervised release term, the conditions of which appear in the judgment.

Dated at Milwaukee, Wisconsin, this 31st day of October, 2006.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge